**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **XPAN, LLC, etc.,** | ) | **CASE NO. 5:03CV225** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **COMPUTER TASK GROUP, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J**.:

This matter comes before the Court upon the Motion of Defendant Computer Task Group, Inc. ("CTG") in Limine to "Cap" XPAN's Recoverable Damages to the Contract Price (ECF DKT #89); Motion of Defendant CTG for Partial Summary Judgment (ECF DKT #87); and Motion of Plaintiff XPAN for Partial Summary Judgment on Count I - Breach of Contract (ECF DKT #92). For the reasons that follow, Defendant's Motion to "Cap" Recoverable Damages is granted; Defendant's Motion for Partial Summary Judgment is granted in part and overruled in part; and Plaintiff's Motion for Partial Summary Judgment is overruled.

## I. FACTUAL BACKGROUND

On February 4, 2003, XPAN initiated this litigation against CTG, alleging breach of contract arising out of the Consulting Agreement executed by both parties on October 31, 2001, and amended on March 14, 2002.  Pursuant to the Agreement, CTG agreed to produce a software system, designated as "Solarix", for XPAN in exchange for payment of Seven Hundred and Six Thousand Dollars ($706,000).  (As the result of a negotiated Change Order, the original contract price was increased by One Hundred and Twenty Thousand Dollars ($120,000); but XPAN actually paid Six Hundred Thirty-Five Thousand Four Hundred Dollars ($635,400) as a liquidated amount pursuant to Section 7.5 of the Agreement).  The agreed delivery date was May 17, 2002; but the system allegedly was not delivered on time nor in operational condition.  On or about September 30, 2003, XPAN amended its Complaint to assert ten separate causes of action, including, inter alia, breach of contract, negligence, breach of UCC warranties, and fraud in the inducement.  By Order, dated February 23, 2005, this Court granted partial judgment in favor of CTG, barring the negligence claims, prohibiting recovery of incidental or consequential damages, and capping compensatory damages at the contract price.

## II. LAW AND ANALYSIS

**Standard of Review**

**Motion in Limine**

The Federal Rules of Evidence do not specifically authorize in limine rulings; but "the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 (1984).  "In limine" has been used "in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated

prejudicial evidence before the evidence is actually offered." *Luce*, 469 U.S. at 40. Because they are rulings on non-dispositive motions, rulings on motions in limine will be reversed only if they are "clearly erroneous or contrary to law." *JGR, Inc. v. Thomasville Furniture Industries, Inc.*, 2006 WL 456479 (N.D. Ohio, February 24, 2006).

**Motion for Summary Judgment**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view all evidence and reasonable inferences in favor of the nonmoving party, in order to determine whether or not there is a genuine issue of material fact for trial. *Id.* at 255. An opponent of a motion for summary judgment may not rely on the mere allegations of the complaint, but must set forth specific facts showing a genuine issue for trial. *Id.* at 248. Summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F. 3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

**Defendant's Motion in Limine**

Defendant CTG moves the Court for a motion in limine, seeking a ruling that, in accordance with this Court's Order of February 23, 2005, Plaintiff XPAN may only seek damages up to the amount of the contract price. In opposition, Plaintiff XPAN asserts that the

Court's earlier Order only applied to contract claims and should not be interpreted as a restriction on all possible recoverable damages.

The Court notes, that in issuing its February 23, 2005 Order, careful consideration was given to the terms and application of the Consulting Agreement between CTG and XPAN. Further, the Court acknowledges that Section 12.3 of that Agreement recites that "This Agreement shall be governed and construed in all respects in accordance with the substantive laws of the State of Ohio." In pertinent part, the Agreement provides at Section 10.2 as follows:

> Except for liability under Section 9.1 of this Agreement and breach of the warranties in Section 8.2(a) and 8.2(b), Customer agrees that CTG's liability hereunder for damages, regardless of the form of action, shall not exceed the total amount paid for services under the applicable Statement of Work or in the authorization for the particular service if no Statement of Work is provided.

This limitation of damages provision, as the Court determined previously, was negotiated and developed between sophisticated commercial entities, with the advice and assistance of legal counsel. It is valid and enforceable.

At this juncture, and pursuant to its Amended Complaint, XPAN alleges that it was fraudulently induced to enter into the Consulting Agreement, along with any subsequent Change Orders. Under Ohio law, a party claiming fraudulent inducement may elect either to rescind the contract, or to retain the benefits of the contract and bring an action to recover damages for the injury caused by the fraud. *Jeffrey Mining Products v. Left Fork Mining Company*, 143 Ohio App. 3d 708, 716 (2001); *Mid-America Acceptance Co. v. Lightle*, 63 Ohio App. 3d 590, 599 (1989). Plaintiff must choose "because it is inconsistent to rescind the contract yet retain the benefits of it." *Jeffrey Mining Products, Id.* at 716. Since XPAN has decided not to rescind the Consulting Agreement, it is bound by its terms – including the legitimate limitation of damages

-4-

recited in Section 10.2.

Therefore, even if the Court's February 23, 2005 Order does not have the sweeping application which Defendant CTG suggests, Plaintiff XPAN is nonetheless restricted to potential recoverable damages in the amount of Six Hundred Thirty-Five Thousand Four Hundred Dollars ($635,400) for any claim, any cause of action, and any remedy, be it compensatory or punitive. The Motion of Defendant CTG in Limine to "Cap" XPAN's Recoverable Damages to the Contract Price is granted.

**Defendant's Motion for Partial Summary Judgment**

Defendant CTG also moves for partial summary judgment in its favor. For purposes of this analysis, the Court once again will apply the substantive law of the State of Ohio, as agreed by the parties in Section 12.3 of the Consulting Agreement.

First, Defendant CTG asserts that Plaintiff cannot prevail on its fraudulent inducement claim with regard to the Consulting Agreement and the jointly-drafted Change Order 11. A fraud in the inducement claim "relates not to the nature or purport of the [contract], but to the facts inducing its execution . . ." *ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 502 (1998) (citing *Haller v. Borror Corp.*, 50 Ohio St. 3d 10, 14 (1990)).  In order to prevail on a claim of fraud in the inducement, "a plaintiff must prove: 1.) a representation; 2.) material to the transaction; 3.) made falsely with knowledge of its falsity; 4.) with the intent of misleading another into relying upon the false statement; 5.) justifiable reliance on the representation; and 6.) resulting injury proximately caused by such reliance." *Onyx Environmental Services v. Maison*, 407 F. Supp. 2d 874, 878 (N.D. Ohio 2005).  In its Amended Complaint, Plaintiff XPAN alleges the following misrepresentations:

-5-

>1. That CTG employees were trained and experienced in the Rational Unified Process ("RUP", a software design paradigm);
>
>2. That CTG's business processes were certified to the Capability Market [sic] Model ("CMM");
>
>3. That CTG's Cleveland Solutions Center was certified in the Capability Maturity Model ("CMM"), and its employees at the Cleveland Solutions Center were trained in such processes; and
>
>4. That CTG possessed the requisite personnel, hardware, and software to develop Solarix "in house," so that CTG would require no outside resources to develop Solarix.

XPAN alleges that prior to the execution of the Consulting Agreement on October 31, 2001, its Director of Technology, David Peppard, reviewed CTG's website, which stated:

>CTG's software development and maintenance processes have been assessed to CMM Level 3, and are expected to reach Level 4 in 2001. Because these processes form an integral part of CTG's quality system, they are used wherever CTG undertakes software development and maintenance.

XPAN further alleges that this certification and training was essential to the Solarix project's success. In the months following the execution of the Agreement, XPAN's representatives allegedly learned that CTG did not have a company-wide CMM Level 3 designation and that the CTG employees on the XPAN project did not receive RUP training. For its part, CTG contends that certain employees were indeed trained in RUP and that prior to the Agreement, its business processes were CMM Level 3 certified. CTG points out that the specific terms of the Consulting Agreement either cover Plaintiff's training and certification concerns or render them immaterial. At Section 1.6, the Agreement provides:

>. . . the parties hereby acknowledge and agree that Customer shall have no right to control

>the manner, means, or method by which CTG performs the services called for by this Agreement. . . Subject to approval of Customer, such approval not to be unreasonably withheld or delayed, CTG may retain third parties to furnish services to it in connection with the Engagement, provided that all third parties who perform work in furtherance of the Engagement will be under the control of CTG. . .

After thorough review of the entire Consulting Agreement and the subsequent Change Order 11, it is clear that no provision was included to require that CTG have, maintain or guarantee RUP training or CMM Level 3 certification of its employees on the Solarix project. Following six months of negotiations, and acting with the able advice of counsel, XPAN, a sophisticated commercial entity, should be expected to have included such a provision if it were truly essential to the project's success. Not only is the certification and training term absent from the contract, the unambiguous language of the Agreement grants CTG sole discretion over the "manner, means, or method" of accomplishing the goals of the project. Furthermore, when months passed and the parties returned to the bargaining table to negotiate Change Order 11, XPAN still did not compel CTG to verify the training and certification of its employees.

In order to succeed on its fraud in the inducement claim, XPAN must demonstrate that CTG knowingly made a **material** misrepresentation with the intent of inducing reliance, and that XPAN did rely on that misrepresentation to its detriment. " A representation is material if it is essential to contract formation. In other words, if the contract would not be formed but for the representation, then the representation is material." *Burke Lakefront Services* v. *Lemieux*, 2002 WL 1821962 (Ohio App. 8th Dist.), ¶ 40.

>Since the Consulting Agreement and Change Order 11 are silent on the matters of RUP training and CMM Level 3 certification;
>
>Since CTG was given broad discretion in the "manner, means, or method" of performing

>its work on the Solarix project; and

>Since XPAN voiced no complaint in this regard during the contract period, nor when it negotiated an extension, nor when it accepted the software,

the Court finds that XPAN has not satisfied its burden of proving that "but for" the alleged misrepresentations, there would have been no contract. Summary judgment is, therefore, granted in favor of CTG on the claim of fraud in the inducement.

Plaintiff XPAN alleges that the Solarix software program is a "good" and not a "service" so the contract is governed by Ohio's Uniform Commercial Code. Whether the Uniform Commercial Code governs a "mixed" contract for the acquisition of software and the provision of training is a question of fact. *Ankle & Foot Care Centers v. Infocure Systems, Inc.*, 164 F. Supp. 2d 953 959 (N.D. Ohio 2001). In its earlier decision, this Court determined that the language of the Agreement itself, negotiated and drafted with the assistance of legal counsel, is couched in terms of "services." Moreover, an examination of the Agreement reveals that "services" and not "goods" predominate. The cost to XPAN for labor exceed the cost of materials. CTG was retained to develop an accounting software system from "scratch" that would be "revolutionary." Plaintiff's reliance upon an Internal Revenue Service case defining a computer program as a "good" is not applicable to an analysis under the Uniform Commercial Code and is, thus, misplaced. The affidavit of the President of XPAN, Jim Spreng, dated September 3, 2004, offers little support to Plaintiff's position. He avers that XPAN expected high quality service and not a "good disc." Nevertheless, under the precedent of *Ankle & Foot Care Centers, supra*, summary judgment is inappropriate and cannot be granted in favor of Defendant CTG as to Plaintiff's claim for relief under the provisions of Ohio's Uniform Commercial Code.

Plaintiff XPAN has asserted a claim for unjust enrichment. Damages for unjust enrichment or for quantum meruit are generally awarded when a party confers a benefit upon another without receiving just compensation. The Consulting Agreement describes the nature of expected services and the price to be remitted. Plaintiff has not demonstrated that CTG received compensation or payment outside the parameters of the parties' contract; so, Plaintiff XPAN is not entitled to maintain its claim for unjust enrichment damages. *Aultman Hospital Association v. Community Mutual Insurance Company*, 46 Ohio St. 3d 51, 55 (1989). Therefore, summary judgment is granted in favor of Defendant CTG on Plaintiff's unjust enrichment claim.

**Plaintiff's Motion for Partial Summary Judgment on Count I (Breach of Contract)**

Plaintiff XPAN contends that it is entitled to summary judgment in its favor on its breach of contract claim, as well as its claim for unjust enrichment. The Court has already addressed the unjust enrichment issue. However, as to breach of contract, XPAN contends that CTG failed to deliver a working Solarix system by the contract deadline. CTG argues that delays and failures on the part of XPAN, itself, "excuse" any missteps on CTG's part. XPAN asserts that a working software system was never delivered. CTG believes that there are legitimate disputes whether or not the project was completed, and whether or not the system was functional. Moreover, CTG points out that the software was accepted and not formally rejected; nor was it returned to allow any "defect" to be cured. In a situation such as this, "[t]he Court may only resolve factual issues at the summary judgment stage if the facts are so one-sided that one party must prevail as a matter of law." *Ankle & Foot Care Centers*, 164 F. Supp. 2d 953 at 958. Here, the facts do not tip the scales only in Plaintiff's favor. Thus, Plaintiff's Motion for Partial Summary Judgment on its breach of contract claim must be overruled.

### III. CONCLUSION

Upon consideration of all the briefs, arguments, and applicable law, and based upon the foregoing analysis, the Motion of Defendant Computer Task Group, Inc. in Limine to "Cap" XPAN's Recoverable Damages to the Contract Price is granted; the Motion of Defendant CTG for Partial Summary Judgment is granted in part and overruled in part; and the Motion of Plaintiff XPAN for Partial Summary Judgment on Count I - Breach of Contract is overruled.

**IT IS SO ORDERED**.

**DATE: 03/13/06**

  s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**
(Signed original on file)